**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | CIVIL ACTION |
| | : | |
| SAFEGUARD SCIENTIFICS | : | 01-3208 |
| | : | |

## MEMORANDUM AND ORDER

**JOYNER, J.**                                              **November 17th, 2004**

Via the motion now pending before this Court, Defendants move to strike and preclude the testimony of Plaintiffs' expert as presented in an affidavit filed August 30, 2004.  For the reasons which follow, this motion shall be granted as to the testimony addressing loss causation in the context of Plaintiff's market manipulation claim, and denied as to the remaining testimony in the affidavit.

## Factual Background

Plaintiffs, investors in Safeguard Scientifics, Inc., filed this action under Rule 10b-5 of the Securities Exchange Act, alleging two bases of liability.  See 17 C.F.R. 240.10b-5. Plaintiffs claim, first, that Defendants failed to disclose material information regarding Safeguard CEO Warren Musser's changing financial position (the "omission claim").  Second, Plaintiffs allege that Defendants purchased stock in Safeguard's partner companies, including eMerge Interactive, Inc., with the intent of inflating and fraudulently manipulating Safeguard stock prices (the "market manipulation claim").

On May 18, 2004, this Court entered an Amended Scheduling Order setting the deadline for expert discovery for July 9, and the deadline for dispositive motions for July 30.  Plaintiffs timely filed a Preliminary Report of Anticipated Testimony by Mr. R. Alan Miller (the "Preliminary Report") as well as a later supplemental report.  Mr. Miller was deposed on June 29 regarding his expert opinions as presented in these reports.

On July 30, Defendants filed a Motion for Summary Judgment challenging Plaintiffs' omission and market manipulation claims on various grounds, including a lack of evidence with respect to loss causation, a key element of both claims.  Plaintiffs' response to the motion was accompanied by a supporting Declaration by Mr. Miller (the "Miller Declaration") setting forth his opinions regarding loss causation.  Defendants now move to strike the Miller Declaration as untimely, alleging that it is an improper expert report filed in violation of this Court's scheduling order.  Alternatively, Defendants contend that the Miller Declaration must be stricken because it directly contradicts Mr. Miller's earlier sworn testimony.

<u>**Relevant Legal Standards**</u>

Parties are required to disclose the identity of potential expert witnesses, accompanied by a written expert report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor" and "the data or other

2

information considered by the witness in forming the opinions,"
within the time frames set out in Federal Rule of Civil Procedure
26.  Fed. R. Civ. P. 26(a)(2)(B).  Where additional relevant
information becomes available such the initial expert report is
rendered "incomplete or incorrect," a party is obligated to
supplement or correct the initial disclosure by filing a
supplemental report before the deadline for pretrial disclosures.
Fed. R. Civ. P. 26(e).  If the court's scheduling order provides
for rebuttal reports, a party may also submit an expert report to
"contradict or rebut evidence" identified by the opposing party
within the deadlines set by the court.  Fed. R. Civ. P.
26(a)(2)(C).  Finally, a party opposing a motion for summary
judgment may serve opposing affidavits, including sworn
statements by potential expert witnesses, at any point prior to
the date of the hearing.  Fed. R. Civ. P. 56(c), 56(e).

     Rule 37 of the Federal Rules of Civil Procedure provides for
exclusionary sanctions where parties fail to comply with Rule 26
discovery requirements.  With respect to timeliness, a court may
prohibit a party from introducing matters in evidence where the
party has failed to obey a scheduling order entered under Rule
26(f).  Fed. R. Civ. P. 37(b)(2)(B).  With respect to the
substance of discovery disclosures, a party will not ordinarily
be permitted to use information at trial or on a motion if the
information should have been disclosed pursuant to Rule 26(a),

and the party offers no substantial justification for failing to
do so.  Fed. R. Civ. P. 37(c)(1); Fed. R. Civ. P. 26, Notes of
Advisory Committee on 1993 Amendments.  Thus, if an expert's
initial report does not include a complete statement of opinions
to be expressed and the basis for these opinions, a court may
prohibit the expert from later testifying on issues or opinions
not addressed in the initial report.  Johnson v. Vanguard Mfg.,
Inc., 34 Fed. Appx. 858, 859 (3rd Cir. 2002) (upholding district
court's exclusion under 37(c)(1) of expert testimony on accident
causation, a subject not addressed in his expert report).

     Given that exclusionary sanctions under Rule 37 are extreme
in nature, a court may not impose them unless it first finds that
the party: (1) revealed previously undisclosed evidence when
trial was either imminent or in progress; or (2) acted in bad
faith, which is more than a mere lack of diligence.  Stein v.
Foamex Int'l, Inc., No. 00-2356, 2001 U.S. Dist. LEXIS 12211 at
8-9, 2001 WL 936566 (E.D. Pa. 2001) (citing In re Paoli R.R. Yard
PCB Litig., 35 F.3d 717, 791-93 (3rd Cir. 1994)).  When making
these determinations, a court should consider: (1) the prejudice
or surprise of the party against whom the excluded evidence would
have been offered, (2) the ability of that party to cure the
prejudice, (3) the extent to which waiver of Rule 37 sanctions
would disrupt the orderly and efficient trial of the case or of
other cases in the court, and (4) bad faith or willfulness in

                                4

failing to make a required disclosure or comply with a court order.  Stein, 2001 U.S. Dist. LEXIS 12211 at 8-9 (citing In re Paoli, 35 F.3d at 791).

Where sanctions under Rule 37 are not appropriate, the Third Circuit has held that a court deciding a motion for summary judgment may disregard or strike a 56(e) opposing affidavit if it directly contradicts the affiants's prior testimony without a satisfactory explanation.  Hackman v. Valley Fair, 932 F.2d 239, 241 (3rd Cir. 1991); see also Martin v. Merrell Down Pharm., Inc., 851 F.2d 703, 705 (3rd Cir. 1988).  If an issue raised in the 56(e) affidavit had never been directly addressed at deposition, or the prior testimony was ambiguous, the affidavit will typically be viewed as a permissible clarification.  See Giancristoforo v. Mission Gas & Oil Prods., Inc., 776 F. Supp 1037, 1043 (E.D. Pa. 1991); Videon Chevrolet, Inc. v. General Motors Corp., 992 F.2d 482, 488 (3rd Cir. 1993).  However, where the new affidavit offers so many new opinions that it dramatically changes the "flavor and theory" of the case, it must be disregarded, even absent a Rule 37 finding of bad faith. Stein, 2001 U.S. Dist. LEXIS 12211 at 11, 20 (quoting Pellegrino v. McMillen Lumber Prods. Corp., 16 F. Supp. 2d 574, 583 (W.D. Pa. 1996)).

## Discussion

### I. Timeliness of the Miller Declaration

Defendants move to strike the Miller Declaration as untimely pursuant to Rule 37(b)(2)(B), alleging that it is an impermissible expert report filed after the July 9, 2004 deadline for expert discovery set forth in this Court's Amended Scheduling Order.

While variously described by Plaintiffs as a "rebuttal" or "supplemental" report, we find that the Miller Declaration qualifies as neither.  Because this Court's Amended Scheduling Order did not provide for Rule 26(a)(2)(C) rebuttal reports, the Miller Declaration cannot be characterized as such.  See Aveka LLC v. Mizuno Corp., 212 F.R.D. 306, 310 (M.D. N.C. 2002).  Likewise, as plaintiffs do not contend that Mr. Miller's original report was incomplete or incorrect, the Miller Declaration does not qualify as a Rule 26(e) supplemental report.

The Miller Declaration is instead governed by Rules 56(c) and 56(e), which establish that a party opposing a motion for summary judgment may serve opposing affidavits at any point prior to the date of the hearing.  The Miller Declaration, filed as an accompaniment to Plaintiffs' memorandum of law in opposition to Defendants' motion for summary judgment, falls within this basic description of a 56(e) opposing affidavit, and was timely filed.  Because it was presented as an opposing affidavit, rather than a rebuttal or supplemental expert report, the Miller Declaration does not run afoul of this Court's Amended Scheduling Order and

may not be stricken on those grounds.

## II. Impermissible Supplements and Contradictory Affidavits

Defendants have identified three portions of the Miller Declaration that allegedly contradict or impermissibly supplement Mr. Miller's Preliminary Report and deposition testimony.  We find that the portions of the Miller Declaration addressing loss causation in the context of Plaintiffs' market manipulation claim must be stricken, as they untimely supplement and directly contradict Mr. Miller's prior testimony.  The remainder of the Miller Declaration does not appear to violate the discovery requirements of Rule 26(a) or the Rule 56(e) standards for opposing affidavits.

### A. The Causal Impact of eMerge Purchases on Safeguard Stock Prices

Mr. Miller's Preliminary Report begins with a list of subjects on which Plaintiffs' counsel requested Mr. Miller's opinion.  This list covers various aspects of Plaintiffs' omission claim, referring repeatedly to the "omissions and misstatements" described in the Complaint, but does not mention Plaintiffs' market manipulation claim directly.  Preliminary Report, ¶ 1.  Indeed, within the Preliminary Report, Mr. Miller present no opinion at all regarding the causation aspect of the market manipulation claim, specifically, whether the eMerge trades had any causal impact on Safeguard's stock price.  The

subsection of the Preliminary Report entitled "Loss Causation" is only two paragraphs long, and does not address causation with respect to the manipulation claim, referring only to the causal effect of "the omissions and misstatements described in the Complaint and/or discussed heretofore."  Preliminary Report, ¶ 26, 27.  In fact, Mr. Miller states in ¶ 13 of the Preliminary Report that he had "not yet separately calculated the effect" of the eMerge purchases on Safeguard stock prices.

Despite the fact that Mr. Miller's Preliminary Report gave no opinion on loss causation in the market manipulation context, and on its face established that no relevant calculations had been done, Defendants' counsel later questioned Mr. Miller extensively during his deposition to confirm his position (or lack thereof) on this issue:

> Q: In your report at paragraph 13, you indicate, Mr. Miller, that you have not yet separately calculated the effect of the undisclosed eMerge purchases by Musser and associated entities on eMerge and/or Safeguard's stock prices.  Does that remain true as of the current date?
> ...
> Q: So at this juncture, regardless of the intent of the parties making those purchases, you have not formulated an analysis as to whether or not those purchases had an impact on the stock price of either eMerge or Safeguard?
> ...
> Q: Do you make any assumption one way or the other that those purchases had an impact on the stock price of either eMerge or Safeguard's stock?
> A: Yes. In the trading sense?
> Q: Yes.
> ...
> Q: You could do a statistical analysis to

8

determine the impact of these purchases on Safeguard's
stock and in turn - I'm sorry - on eMerge's stock and
in turn on Safeguard's stock, correct, one could do
that?
     ...
     BY MR. DODDS: Well, did you do a separate analysis
of the market manipulation alleged with respect to the
purchases in eMerge stock?
     MR. COLLINS: I'm sorry, separate from what?
     MR. DODDS: Separate from his other damage
analysis?
     (Miller Deposition, p. 208-213)

     BY MR. QUINN: There's no calculation to support
that allegation?
     MR. COLLINS: Which portion of the allegation?
     MR. QUINN: That there was a market effect of
favorably impacting or distorting the performance of
eMerge in the aftermarket.
     Q: There's no calculation to support that,
correct?
     MR. COLLINS: Vague and ambiguous.
     Q: Is there a calculation to support that?
     ...
     Q: So there is no calculation as to any impact on
eMerge stock prices?
     (Miller Deposition, p. 339-340)

     In response to these questions, Mr. Miller consistently

responded that, "as a separate item" apart from the calculation

of damages for the non-disclosure claim, he had not analyzed the

effect of the allegedly manipulative eMerge purchases on eMerge

or Safeguard stock prices.  (Miller Deposition, p. 209, 213-14,

339-340).  Mr. Miller did, however, "hesitatingly" admit that one

could do such a statistical analysis.  He also stated that "we

made the observation that [the eMerge purchases] very likely did

on at least certain days or certain weeks have a positive impact

on those prices due to the proportion of volume that those

9

purchases made up at the times they were made." (Miller Deposition, p. 210-211).  To this Court, at least, Mr. Miller's responses at deposition seem clear – while Mr. Miller believed, simply based on the volume of eMerge purchases, that the trades likely had a positive impact on stock prices, he had performed no more detailed calculations or analyses to determine whether there was a true causal impact.

The Miller Declaration, however, asserts that "[W]e did indeed analyze the impact of trading in eMerge stock by Musser, Grinker, Safeguard and the Foundations prior to Plaintiffs' submission of the Answers to Interrogatories.  We concluded that there was considerable market impact that necessarily inflated the price of eMerge stock and thereby inflated or propped up the price of Safeguard stock..."  Miller Declaration, ¶ 16.

### Rule 37 Exclusionary Sanctions are Appropriate

Plaintiffs, in bringing this action for market manipulation, are well aware that loss causation is one of the elements of the claim.  If Plaintiffs intended at any time to present Mr. Miller's expert opinion as to the causation element of the market manipulation claim, they were obligated to timely submit or supplement an expert report presenting this opinion and its basis pursuant to Rule 26(a)(2)(B).  Because the Preliminary Report did not include a statement of Mr. Miller's opinion regarding causation in the market manipulation context, and because

10

evidence of related calculations or analyses was presented for the first time in the Miller Declaration, we find that Plaintiffs have failed to comply with expert witness disclosure requirements.

This Court further finds that preclusion of this evidence under Rule 37(c)(1) is appropriate because the Miller Declaration was filed in bad faith, prejudicing Defendants and disrupting the efficient trial of this case. Stein, 2001 U.S. Dist. LEXIS 12211 at 8-9. In Stein, the plaintiff timely filed an expert report identifying five specific areas of concern regarding environmental contaminants on Plaintiff's property. Id. at 3. After defendants moved for summary judgment, plaintiff introduced a 56(e) opposing affidavit by the same expert identifying a new area of concern, vinyl chloride contamination, on which the expert had not opined in his initial report. Id. at 4-5. This Court found that the affidavit was filed in bad faith because it was "carefully tailored, by [Plaintiff's] counsel, to dovetail with the statutory requirements the Defendants claimed [Plaintiff] had failed to prove." Id. at 19. This Court struck the portions of the affidavit expressing opinions that should have been disclosed in the preliminary expert report, finding that any other result "would effectively circumvent the requirement for the disclosure of a timely and complete expert report." Id. at 18.

11

Plaintiffs' use of the Miller Declaration to present a new
expert opinion on the causal impact of the eMerge purchases is
equally concerning.  The fact that Mr. Miller's Preliminary
Report did not even touch on an issue so central to Plaintiffs'
claim exceeds a "mere lack of diligence" on counsel's part.  <u>Id</u>.
at 19.  Plaintiffs have offered no justification for this delay,
which comes after months of discovery, and their suggestion that
Defendants cure any prejudice by re-deposing Mr. Miller is
without merit.  As this Court emphasized almost nine months ago,
"nearly three years have elapsed since [the case's] inception,
discovery has closed and the matter is now trial-ready."  <u>In Re</u>
<u>Safeguard Scientifics</u>, 220 F.R.D. 43, 49 (E.D. Pa. 2004).
Allowing Plaintiffs to rely on Mr. Miller's opinions regarding
loss causation for the market manipulation claim, either in their
response to Defendants' summary judgment motion or at trial,
would be unfair to Defendants and would disrupt the efficient
disposition of this case.  Accordingly, this Court must exercise
its discretion under Rule 37(c)(1) to preclude this evidence.

### **Exclusion Under Rule 56 is Also Appropriate**

Furthermore, this Court finds that the new opinions
presented in Plaintiff's 56(e) opposing affidavit regarding the
causal impact of eMerge trading must be stricken because they
directly contradict Mr. Miller's prior testimony.  <u>See</u> <u>Hackman</u>,
932 F.2d at 241.

12

Plaintiffs contend that there is an ambiguity in the apparent contradiction between the Miller Declaration and the statement at ¶ 13 of the Preliminary Report (later affirmed at deposition) that no analysis had been done regarding the impact of the eMerge trades.  Plaintiffs allege that the relevant portions of the Preliminary Report and the deposition testimony referred only to calculations of damages, and were not intended to suggest that no calculations had been made with respect to loss causation, a key element of the market manipulation claim. Plaintiffs further contend that this ambiguity was exacerbated by Defendants' tactical decision not to ask deposition questions regarding loss causation "in order to clear the decks for their summary judgment motion."  (Plaintiffs' Response, p. 10-11).

Given the sheer number of times Defendants' counsel asked Mr. Miller about his opinions and analyses regarding the causal effect of the eMerge trades, we find Plaintiffs' allegation baseless.  Under the circumstances, we "do not believe that defense counsel can reasonably be held accountable for having failed to uncover" a hidden meaning behind testimony that otherwise seemed abundantly clear.  Pellegrino, 16 F. Supp. 2d at 583-84 (granting defendants' motion to strike an opposing affidavit where defense counsel had attempted to exhaust the factual bases of plaintiff's claim during deposition but plaintiff had been "purposely evasive" regarding facts necessary

to establish her claim).  This Court finds no ambiguity in Mr.
Miller's testimony in response to defense counsel's deposition
questions.  Because of the direct contradiction between this
testimony and the Miller Declaration, this Court will disregard,
in deciding the pending motion for summary judgment, all
information in the Miller Declaration relating to loss causation
of the market manipulation claim.

### 2. **Disclosure Events Relevant to Causation Analysis**

The section of Mr. Miller's Preliminary Report entitled
"Loss Causation" indicates that a review was done of Safeguard
stock prices and market movements in connection with news
articles, analyst reports, SEC filings and other disclosure
events from October 1, 1999 to April 30, 2001.  Preliminary
Report, ¶ 26, Exhibit G.  Mr. Miller concludes that the declines
in Safeguard stock prices "which occurred after the relevant
disclosures were substantially related to the issues raised in
the Complaint," but does not identify specifically which of the
hundreds of disclosures in Exhibit G he considered "relevant" for
the purposes of determining loss causation.  Preliminary Report,
¶ 26.

In an earlier section of the Preliminary Report addressing
damage calculations, Mr. Miller explains that he calculated the
true value of Safeguard stock by looking at price movements after
three "relevant disclosures" relating to Mr. Musser's margin loan

14

agreement - a Dow Jones Business News article dated December 18, 2000, a Wall Street Journal Article dated February 9, 2001, and a Fortune Magazine article dated February 20, 2001.  Preliminary Report, ¶ 12, ¶ 14, Exhibit C.  In the same paragraph, however, Mr. Miller emphasizes that his approach to calculating damages is conservative, and that "[t]here is some evidence to suggest that there could be additional relevant declines in Safeguard stock price which we have not taken into account for calculating damages at this time," including the three trading days after Mr. Musser's November 29, 2000 sale of 6.5 million Safeguard shares. Preliminary Report, ¶ 14.  Mr. Miller also refers to the December 5, 2000 disclosure which revealed for the first time that Mr. Musser had to sell his Safeguard shares to meet a margin loan arrangement.  Preliminary Report, ¶ 14.

     At deposition, Defendants' counsel questioned Mr. Miller extensively about the market impact of various disclosures in connection with Plaintiffs' omission claim.  Mr. Miller first noted that, while "we often do differentiate" between market impact and damage analyses, "that's not to imply that they're not connected under some measures of damages."  Miller Deposition, p. 75.  Mr. Miller stated that the three disclosure occasions used to calculate damages were not necessarily "exhaustive in terms of market impact."  Miller Deposition, p. 78.  In fact, Mr. Miller indicated that his market impact analysis was based on his

observations of "quite a number of statements" made during the period in question, including the December 5, 2000 announcement and the trading activity between November 29 and December 4, 2000.  Miller Deposition, pp. 78-80.  Mr. Miller admits that his team has continued to look at those two additional disclosures to determine what effect, if any, they had on Safeguard prices.  Miller Deposition, p. 80, 111.

The Miller Declaration, under the heading "Loss Causation," identifies five occasions on which disclosures of material information caused Safeguard's stock price to react negatively.  Miller Declaration, ¶ 14.  Defendants object to the inclusion of two of these disclosure occasions (December 5, 2000 and the trading days following November 29, 2000), as the Preliminary Report did not cite these dates in its damages calculation.

### **Sanctions Under Rule 37 or 56 are Inappropriate**

Plaintiffs have satisfied the requirements of Rule 26(a)(2)(B) with respect to Mr. Miller's opinions on loss causation for the five disclosure occasions in the Miller Declaration.  The Preliminary Report clearly states Mr. Miller's opinion that Safeguard stock prices dropped in connection with public disclosures of information allegedly withheld or misreported by Defendants, and establishes that this opinion was based on a review of stock prices and disclosure events.  Mr. Miller's failure to identify with specificity the disclosures he

16

focused on in establishing loss causation is not fatal,
particularly as Defendants' counsel questioned him extensively
during deposition to identify the relevant disclosure events
behind his market impact analysis.  For the purpose of
determining damages, however, Plaintiffs are obviously limited to
the three disclosure dates identified in ¶ 14 of the Preliminary
Report.

        We likewise refuse to strike the Miller Declaration pursuant
to Rule 56(e), as it does not directly contradict Mr. Miller's
prior testimony.  Both the Preliminary Report and Mr. Miller's
testimony established that the analysis of causal impact was
based on a number of disclosure events.  Neither sworn statement
limited Mr. Miller's analysis of loss causation to the three
disclosure events highlighted as relevant to the damages
analysis.

        3. **The Dow Jones Article as Evidence of Loss Causation**

        In the Preliminary Report, Mr. Miller identifies three dates
when a "decline in Safeguard's stock price [was] attributable to"
relevant disclosure events.  Preliminary Report, ¶ 12, ¶ 14.   On
one of these dates, Monday, December 18, 2000, a Dow Jones
Business News article was published discussing Mr. Musser's
recent trading activity, and Safeguard's price dropped
approximately 17%.  The article, which was published late in the
day, reported that Safeguard's stock prices had dropped sharply

"as focus apparently returned to the firm's chairman selling 7.5 million shares earlier this month."  The article cited one analyst's suggestion that some investors may not have known about the sales "until Monday,"[1] when details of Mr. Musser's SEC filings were published.

In their Motion for Summary Judgment, Defendants rightly point out that the December 18 drop in Safeguard's stock price, which occurred well before the Dow Jones article was released, could not have been caused by the disclosures in the article. The Miller Declaration admits this fact, and clarifies that the Dow Jones article itself was not a cause of the price drop, but rather "evidence of loss causation."  Miller Declaration, ¶ 4-C. Defendants now challenge this statement as contradicting Mr. Miller's earlier position.

### Sanctions under Rule 37 or 56 are inappropriate

We find no inherent contradiction between Mr. Miller's current position and his earlier statement that declining Safeguard prices on December 18 could have been attributed to certain relevant disclosures.  Appendix C to the Preliminary Report clearly indicated that the Dow Jones article was a summary, rather than news itself, and Mr. Miller never claimed that the article itself caused the December 18 price drop.  If

---

[1] It is unclear from the wording of the Dow Jones article whether "until Monday" refers to the date that the article was published, Monday, December 18, or the previous Monday, December 11.

Defendants wish to further contest Mr. Miller's selection of December 18 as a relevant disclosure date, this Court reminds them that they will have ample opportunity to do so at trial.

### III. <u>**Violations of the Daubert Standard**</u>

Defendants also move to strike the Miller Declaration as violative of the standards for expert testimony set forth in <u>Daubert v. Merrell Dow Pharma., Inc.</u>, 509 U.S. 579 (1993).  As we have above found that the portion of the Miller Declaration addressing loss causation in the market manipulation context must be stricken, Defendants' <u>Daubert</u> challenge to this section appears moot.

Defendants likewise claim that Mr. Miller's conclusion regarding the market impact of a December 5, 2000 disclosure violates <u>Daubert</u> standards because it is not supported by verifiable scientific analysis.  While we withhold judgment on this issue at this point in time, Plaintiffs may petition this Court for a full <u>Daubert</u> hearing if they wish to further pursue this challenge.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:                          :    CIVIL ACTION
                                :
SAFEGUARD SCIENTIFICS           :    01-3208
                                :
                                :

## ORDER

AND NOW, this   17th   day of November, 2004, upon
consideration of Defendants' Motion to Strike and Preclude
Testimony of Plaintiffs' Expert, R. Alan Miller, and for Costs
(Docs. No. 64, 65) and all responses thereto (Docs. No. 66, 67,
68), it is hereby ORDERED that the Motion is GRANTED in part and
DENIED in part, as follows:

1. Defendants' Motion to Strike is GRANTED ONLY with respect
to paragraphs 16 through 19 of the Miller Declaration.  These
paragraphs shall be stricken from the record in this case.

2.  Defendants' Motion to Preclude is GRANTED ONLY with
respect to Mr. Miller's testimony regarding the matters and
opinions contained in paragraphs 16 through 19 of the Miller
Declaration.  Mr. Miller is precluded from presenting expert
testimony regarding his opinions on loss causation in the context
of Plaintiff's market manipulation claim inasmuch as those
opinions are not contained in his Preliminary Report, dated
February 6, 2004, or his Supplemental report, dated March 15,
2004.

3.   Defendants' request for costs and expenses incurred in connection with their Motion to Strike and Preclude Testimony is DENIED.

                              BY THE COURT:



                              s/J. Curtis Joyner
                              J. CURTIS JOYNER, J.